UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO.:

JEFFREY MILLER, individually,
and derivatively on behalf of Nominal
Defendants UCRC, Inc. and UCRC
Holdings, Inc.,

       Plaintiff,

v.

GARY HOSTE,

       Defendant,

and

UCRC, Inc. and UCRC Holdings,
Inc.,

       Nominal Defendants.

_____/

## COMPLAINT AND VERIFIED SHAREHOLDER DERIVATIVE PETITION

## COMPLAINT

    Plaintiff, JEFFREY MILLER, individually, sues Defendant, GARY HOSTE, and alleges:

    1.    Plaintiff JEFFREY MILLER ("Miller) is a resident of the State of California, and is otherwise *sui juris*.

    2.    Defendant GARY HOSTE ("Hoste") is a resident of the State of Florida, and is otherwise *sui juris*.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, as there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      This Court is vested with the authority to grant the declaratory relief sought herein under 28 U.S.C. §2201 (Declaratory Judgment Act).

5.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391, as Hoste resides in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in Broward County, Florida.

### General Allegations Common to All Counts

6.      Hoste is a licensed chiropractor in the State of Florida.

7.      Miller is a licensed chiropractor in the State of California.

8.      UCRC, Inc. (hereinafter "UCRC") is a Florida corporation that was incorporated on or about February 27, 2004 by George Coufal.  A copy of the Articles of Incorporation of UCRC is attached as Exhibit "1."

9.      UCRC was formed for the purpose of operating a chiropractic center doing business as "Universal Chiropractic," having its principal place of business at 3838 N. University Drive, Sunrise, Florida 33151.  A true and correct copy of the fictitious name registration, dated March 2, 2004, is attached as Exhibit "2."

10.      Miller and Hoste first became acquainted with each other as classmates at Life Chiropractic College West in Hayward, California, in approximately 1994.

11.      Between 1996 and 2005, Hoste worked intermittently for Miller in the chiropractic field.  In approximately 2005 or 2006, Hoste relocated to Florida.

2

12.     On or about April 2007, Hoste was working in Florida as a salaried chiropractic physician for UCRC.

13.     On or about April 2007, Hoste began to speak about Miller about his desire to acquire UCRC for a purchase price of approximately $400,000.  Hoste told Miller at that time that Hoste, together with Satyam Patel ("Patel") who was an investor, were contemplating a purchase of the chiropractic venture from the extant shareholders of UCRC, namely Kent Bernarduci ("Bernarduci") and Robert Findlay ("Findlay").

13.     Hoste orally communicated to Miller certain concerns that Hoste had about the contemplated acquisition of UCRC.  Amongst Hoste's concerns were that Hoste himself lacked financial capacity either to purchase UCRC or to contribute capital towards the financing of an acquisition of UCRC; that Patel had insufficient knowledge of the chiropractic field; and that Hoste was unsure as to how to structure the transaction.

14.     The discussions between Hoste and Miller about Hoste's intended acquisition of UCRC continued for many months.  In the beginning of the discussions, it was anticipated by Hoste that Patel would secure a loan to finance the purchase of UCRC.

15.     Eventually, Hoste came to understand that Patel, with or without Hoste's assistance, lacked the requisite business acumen and/or financial wherewithal to either purchase UCRC or to secure a loan to finance the acquisition of UCRC.   Accordingly, in late summer/early autumn of 2007, Hoste began to ask Miller whether Miller would like to join Hoste as a "50/50 partner" in the purchase of UCRC.

16.     In response to Hoste's request, Miller began due diligence to evaluate the risks and benefits of the proposed deal.  Throughout the period between August and October, 2007, Miller, together with Hoste, reviewed material UCRC financial data, including, *inter alia*, the

3

UCRC Form 1120S federal tax returns for 2005 and 2006, and traveled to visit the UCRC practice in Sunrise, Florida on multiple occasions.

17.     On or about September 2007, Miller concluded that the investment opportunity in UCRC was attractive.  Accordingly, sometime on or about October, 2007, Miller and Hoste entered into an oral agreement between themselves to jointly purchase the stock of UCRC for the purposes of operating Universal Chiropractic.

18.     Pursuant to the terms of the oral agreement, in consideration for a 50% interest in UCRC, Miller was obligated (1) to arrange for and secure a bank loan to purchase the ongoing practice, (2) to provide whatever money that was necessary as a down payment to secure the loan and consummate the acquisition, (3) to provide whatever additional incidental monies would be required to effectuate the purchase agreement, and (4) to participate in marketing efforts as appropriate to expand the ongoing UCRC business.

19.     Pursuant to the terms of the oral agreement, in consideration for a 50% interest in UCRC, Hoste, as a licensed chiropractor in Florida (which Miller is not), was obligated to operate the practice.

20.     The oral agreement contemplated that both Hoste and Miller, as officers of the corporation, would draw a reasonable salary in consideration for their respective contributions of services performed for UCRC, in conformity with the requirements of Florida statutes.

21.     Throughout the period between October and December 2007, Hoste introduced Miller to the sellers of UCRC and referred to Miller at all times as his "partner" in the acquisition.  At all times material, Hoste represented to the sellers of UCRC that Miller and Hoste would each be equal owners of the to-be-acquired UCRC stock.

4

22.     Throughout the period between October and December 2007, Miller began to negotiate the terms of the acquisition with the UCRC principals. Miller, together with Hoste, reviewed and analyzed proposed terms for the purchase in various redactions.

23.     On or about December 21, 2007, Bernarduci wrote a letter to Hoste and Miller which contained the material terms of an "official offer" relating to the acquisition by Hoste and Miller of UCRC (the "Official Offer").

24.     On or about December 27, 2007, Hoste and Miller wrote a letter of intent ("Letter of Intent") directed to Bernarduci and Findlay outlining an updated understanding of proposed material terms of the acquisition of UCRC by Hoste and Miller.

25.     The Letter of Intent established a purchase price of $475,000 for UCRC.

26.     The Letter of Intent obligated Hoste and Miller as purchasers to make a $10,000 good faith deposit into an escrow account held by sellers' attorney Steven Lander, Esq. ("Lander") within ten (10) business days of the signing of the Letter of Intent. The good faith deposit was designated as refundable if Hoste and Miller failed in their efforts to secure financing to enable the acquisition.

27.     On or about January 26, 2008, Miller tendered the required $10,000 payment into the escrow account held by attorney Lander. The good faith deposit was tendered from Miller's personal accounts.

28.     From December 27, 2007 through June 3, 2008, Miller worked tirelessly with lender CIT Small Business Lending Corporation (hereinafter, "CIT" or "the Lender") to secure the requisite financing for the UCRC acquisition. During this time, Miller participated in negotiating material terms of the loan and performed all tasks necessary to ensure compliance with the Lender's exhaustive check list of conditions precedent to the closing of the loan.

5

During this time, Miller flew from California to Florida approximately once every two weeks to ensure that the CIT loan would come to fruition and to work on business development for UCRC.

29.     On or about March 6, 2008, Hoste and Miller, as the designated "Purchasers," entered into a Stock Purchase Agreement ("UCRC Stock Purchase Agreement") with Bernarduci and Findlay, as Sellers, pursuant to which Sellers agreed to deliver 100% of the outstanding shares of UCRC, Inc. in consideration of a $475,000 purchase price.  A true and correct copy of the UCRC Stock Purchase Agreement is attached as Exhibit "3."

30.     The UCRC Stock Purchase Agreement contemplated a closing date for the loan transaction to occur within fifteen days of May 6, 2008, subject to placement of the CIT loan and licensing from the Florida Agency for Health Care Administration ("AHCA").

31.     By subsequent stipulation of all parties, the closing date for the loan transaction was ultimately extended until June 30, 2008.

32.     On or about March 2008, CIT representative Mark Thompson ("Thompson") orally represented to Hoste and Miller that the loan processing would proceed more smoothly if Hoste were listed on the loan documents as an eighty-five percent (85%) owner of the purchasing entity.  Thompson based this statement on the fact that Hoste's personal credit rating was superior to Miller's.

33.     Accordingly, Hoste and Miller agreed that for purposes of securing the loan, Hoste and Miller would be listed on all loan documents as having 85% and 15% ownership interests, respectively, in UCRC.

34.     Hoste and Miller further agreed with Thompson that Hoste and Miller would be listed as having 85% and 15% ownership interests, respectively, on all licensing applications

which Hoste and Miller were in the process of preparing for the Florida Agency on Health Care Administration ("AHCA").

35.   It was understood between and among Hoste, Miller and Thompson that Hoste and Miller would enter into a Stock Purchase Agreement for the purpose of restoring the intended equal partnership interests (Hoste 50%; Miller 50%) in UCRC, to become effective upon the acquisition of UCRC.   It was further understood between and among Hoste, Miller and Thompson, that CIT assented to such an executory share transfer, creating an equal ownership interest between Hoste and Miller.   Moreover, the express terms of the AHCA license application allowed for a transfer of up to 35% of the shares without the need to refile the AHCA license application.

36.   On or about April 26, 2008, Hoste and Miller entered into a Stock Purchase Agreement (the "Hoste Stock Purchase Agreement"), pursuant to which Hoste committed to transfer thirty-five shares of capital stock of UCRC, Inc., representing thirty-five percent (35%) of the company's outstanding shares, to Miller, such transfer to occur at the closing of Hoste's and Miller's acquisition of UCRC.   A true and correct copy of the Hoste Stock Purchase Agreement is attached as Exhibit "4."

37.   On or about June 27, 2008 CIT representative Kathy Forbes-Hunter sent an e-mail to Hoste and Miller notifying them that the Small Business Administration requires that when two unrelated individuals purchase the stock of a corporation, the individuals must form a new entity to hold title to the shares of the corporation.

38.   In compliant response to the e-mail notice of Kathy Forbes-Hunter of the SBA requirement, on June 30, 2008, Hoste and Miller formed UCRC Holdings, Inc. ("UCRC Holdings"), a Florida Corporation.   The Articles of Incorporation designated Hoste as President

7

and Director of the corporation; the Articles of Incorporation designated Miller as Vice-President and Secretary of the corporation. *See* Exhibit 5.

39.     The acquisition of UCRC by UCRC Holdings was consummated along with the closing of the loan on or about June 30, 2008 (the "Closing Date").  The transfer of stock certificates from the sellers of UCRC to Hoste and Miller, each as 50% owners of UCRC Holdings, occurred contemporaneously on the Closing Date.

40.     Since the Closing Date, Hoste has at all times maintained exclusive possession, custody and control over all of the corporate documents of UCRC and UCRC Holdings.  Upon information and belief, the corporate documents contain, *inter alia*, the stock certificates reflecting the ownership of UCRC by UCRC Holdings (or, alternatively, Hoste and Miller), as such duly executed certificate[s] are required by UCRC's Corporate Bylaws.

41.     On the Closing Date, it was understood by Hoste, Miller, the sellers of UCRC stock and all agents or employees of CIT involved with the loan transaction, that Hoste and Miller each would be a director of UCRC and UCRC Holdings and that each would participate actively and equally in the management and decision-making involved in operating the corporation. It was, further, the understanding and intention of all the parties that, corporate resources permitting, each would receive distributions from UCRC in equal amounts as long as each assumed an active and ongoing responsibility for carrying a portion of the burdens necessary to operate the business.

42.     Between December 27, 2007 through June 3, 2008, in the presence of Miller, Hoste at all times represented that Miller was Hoste's "partner" and that Miller was to be a 50% owner/partner of UCRC upon the completion of the acquisition.  Among the persons to whom Hoste represented that Miller was Hoste's full partner and a prospective 50% owner of UCRC

8

were the following:  Bernarduci; Findlay; Patel; Thompson, Lander; Bob Hovenan (UCRC's accountant); Dr. Stuart Sherman (Hoste's friend); William Chacon (Hoste's friend); and Donald Rosen (deputy mayor of Sunrise, Florida).

43.     Approximately one week after the Closing Date, Bob Hovenan, certified public accountant for UCRC and UCRC Holdings, requested that Hoste and Miller each sign and submit Internal Revenue Service forms (such as a Form 2553 election to be taxed under Subchapter S of Chapter 1 of the Internal Revenue Code).indicating that Hoste and Miller each had a 50% ownership interest in UCRC Holdings.  Copies of the subject IRS documents have been at all times material within the exclusive possession, custody, and control of Hoste.

44.     On or about August 2008, Hoste and Miller had a business development meeting with attorneys and other personnel from the Hollywood, Florida law firm of Dell & Schaefer, P.A. in an attempt to market their chiropractic services.  At the meeting, Hoste and Miller were seeking a commitment from the attorneys to refer their personal injury clients to UCRC for treatment.  At the meeting with Dell & Schaeffer, Hoste at all times represented that Miller and Hoste each had a fifty percent (50%) ownership interest in UCRC and/or UCRC Holdings.

45.     Between December 2007 August 2008, in multiple conversations, Hoste told his friend Dr. Stuart Sherman that Hoste needed Miller to complete the deal for UCRC because Hoste lacked Miller's experience, marketing savvy, and knowledge to operate a chiropractic business.  Further, Hoste confided in Sherman that Hoste had no money and was thus unable to afford to purchase UCRC by himself.  Hoste specifically represented to Sherman that in consideration for Miller's services and cash contributions, Miller was going to become, and in fact did become, a 50% owner of UCRC and UCRC Holdings.

9

46.     Between December 2007 and May 2008, Hoste and Miller met with Don Rosen, the deputy mayor of Sunrise, Florida, for the purpose of discussions relating to the "lay of the land" in developing a chiropractic practice within the municipality.  Hoste and Miller discussed with Rosen various logistics relating to corporate marketing, regulatory requirements, and participation in the municipal insurance plan.  At the meeting with Mr. Rosen, Hoste specifically represented that Hoste and Miller were "equal partners" in the chiropractic venture.

47.     Between October 2007 and August 2008, Miller contributed cash, property, and the aforedescribed services in consideration for a fifty percent (50%) ownership interest in UCRC and UCRC Holdings, and in reliance upon Hoste's representations that Miller would be an equal equity partner in UCRC and UCRC Holdings.

48.     Specifically, Miller contributed cash of Twenty Thousand One Hundred Forty-Two and 25/100 ($20,142.25), as follows:  Eight Thousand Dollars ($8,000) on or about the Closing Date to consummate UCRC Holdings' acquisition of UCRC through the loan secured with CIT; Ten Thousand Dollars ($10,000) deposit on or about January 26, 2008 into an escrow account held by attorney Stephen Lander for the benefit of the UCRC Sellers; Two Thousand Forty-Two and 25/100 Dollars ($2,042.25) for fees to AHCA, including fingerprinting, on or about March 3, 2008; $100 for purchase of shares of UCRC Holdings common stock from Hoste, on or about June 30, 2008.

49.     Specifically, Miller contributed property as follows:  two (2) computers; 1 external hard drive; 1 briefcase; 2 suitcases; office furniture; a full wardrobe; and personal effects, of an aggregate approximate value of Eighteen Thousand Dollars ($18,000).

50.     In addition, between December 2007 and August 2008, Miller incurred travel expenses of approximately Four Thousand Six Hundred Dollars ($4,600) and miscellaneous

10

other business expenses which were advanced personally by Miller on behalf of UCRC (and/or UCRC Holdings) in an approximate aggregate amount of Four Thousand Two Hundred Dollars ($4,200). It was expressly agreed between Hoste and Miller that the travel and business expenses incurred by Miller were to be reimbursed by UCRC.

51. Beginning in late August or early September 2008, shortly after the UCRC acquisition by Hoste and Miller, Hoste inexplicably began to avoid communications initiated by Miller, including notices provided by Miller that he was canceling various marketing events in view of Hoste's silence, and including requests made by Miller as a shareholder of UCRC and UCRC Holdings for access to corporate documents, including access to the corporate books and records.

52. In view of Hoste's evasive conduct, Miller feared a squeeze-out by Hoste and duly noticed an October 14, 2008 special meeting of the officers and directors of UCRC Holdings at which Miller intended to address the potential issues of squeeze-out and oppressive conduct by Hoste by acting as a controlling shareholder without controlling authority as a fifty per cent (50%) shareholder.

53. Hoste ignored the notice of the special meeting of the officers and directors of UCRC Holdings and did not appear at the special meeting on October 14, 2008.

54. Unbeknownst to Miller at the time that he noticed the October 14, 2008 special meeting, Hoste had already taken unilateral action to amend the Articles of Incorporation of UCRC Holdings on October 3, 2008, to reflect that Hoste was the sole initial officer and/or director of the corporation. A true and correct copy of the Articles of Amendment to Articles of Incorporation of UCRC Holdings (the "Articles of Amendment") is attached as Exhibit "6."

11

55.     The Articles of Amendment to the UCRC Holdings Articles of Incorporation further represented that the adopted amendment, which effectively squeezed out Miller as an officer and director of UCRC Holdings, was approved by a majority vote of the shareholders, which representation was signed by Hoste.

56.     By signing the Articles of Amendment, Hoste has intentionally misrepresented that corporate action had been duly taken by a sufficient number of shareholder votes when in fact Hoste had knowledge that no such shareholder vote ever took place.

57.     By signing the Articles of Amendment and intentionally misrepresenting that corporate action was duly taken when it was not, Hoste has acted unlawfully in violation of Florida statutes, and with malice and oppression, in willful disregard to the rights of Miller as an investor, shareholder, and director of UCRC Holdings and UCRC.

58.     By signing the Articles of Amendment and intentionally misrepresenting that corporate action was duly taken when it was not, Hoste has violated the express terms of the loan with CIT which require that any change of ownership only be made with the Lender's consent.

59.     Upon information and belief, since Hoste began to operate UCRC, Hoste has been drawing a salary in excess of the salary which was agreed to by Hoste and Miller and in excess of a reasonable salary commensurate with the reasonable salary of a chiropractic physician of similar skill and experience practicing in a similar locality.

60.     Upon information and belief, since Hoste began to operate UCRC, Hoste has been diverting corporate revenues for his own personal financial benefit by creating disbursement ledger entries for purported corporate expenditures which lack documentary support.

61.     Upon information and belief, since Hoste began to operate UCRC, Hoste has been taking advantage of corporate opportunities for his personal financial aggrandizement and has

been preferentially paying distributions to himself at the expense of other shareholders, and in wanton and reckless disregard for the rights of Miller, who has an equal equity interest in corporate distributions.

62.     The aforestated acts of Hoste were wrongful and committed for the purpose and effect of diminishing the value of Miller's interest in UCRC and UCRC Holdings relative to Hoste's interest in these corporations.

63.     As a direct and foreseeable result of Hoste's self-dealing, commingling, mismanagement, and fraudulent misrepresentation and concealment, Miller's equity interest in UCRC and UCRC Holdings has been seriously jeopardized and damaged.

64.     Miller has demanded that Hoste allow Miller to conduct a full and open audit of operations of UCRC.  In response, Hoste has expressly refused to cooperate to permit such an audit.  Miller has further requested that Bob Hovenan, Certified Public Accountant, provide Miller with access to corporate tax records of UCRC and UCRC, Inc., and Hovenan has indicated that he has been instructed by Hoste not to provide Miller with access to those records.

65.     To date, Miller has never been provided with any corporate tax returns for UCRC and UCRC Holdings, nor has he been provided with any Schedule K-1 or other reflection of his distributive share of partnership income/deductions.

## FIRST CAUSE OF ACTION
### (Declaratory Relief)

66.     Miller realleges paragraphs 1 through 65, inclusive, as Paragraph 66 of Count I.

67.     This is an action for a declaratory relief pursuant to 28 U.S.C. §2201.

68.     Miller requests that this Court declare his rights and other legal relations between him and Hoste in view of the facts as alleged above.  In particular, Miller requests that this Court

declare that Hoste's willful misconduct by intentionally misrepresenting to the Florida Secretary of State that UCRC Holdings' Articles of Incorporation were amended to exclude Miller as an Officer and Director constitutes an improper squeeze-out of Miller as an officer and director of UCRC Holdings.

69.     Miller further requests that this Court declare that in view of all of the facts and circumstances, that Miller has a vested interest as a fifty per cent (50%) shareholder of UCRC and UCRC Holdings, with a commensurate right to fifty percent (50%) of profits and distributions of these two corporations.

70.     Miller further requests that this Court declare that Hoste has improperly and unlawfully acted as a controlling shareholder when he was not, and is so doing has unlawfully usurped his corporate authority to the detriment of Miller.

71.     The declarations sought herein concerns a present justiciable controversy as to a state of facts, and Miller has an actual, present, and adverse interest in the subject matter, either in fact or law.

72.     The antagonistic interests are all before this Court by proper process.

73.     The relief sought herein is neither for the purpose of giving of legal advice by the Court nor for the purpose of seeking answers to questions propounded by curiosity.

**WHEREFORE,** Miller respectfully requests that this Court enter judgment in his favor against Hoste, as set forth below.

### SECOND CAUSE OF ACTION
### (Equitable Accounting)

74.     Miller realleges paragraphs 1 through 65, inclusive, as Paragraph 74 of Count II.

75.     Being entrusted with the sole and exclusive custody of UCRC's books and

records and with all books and records detailing the operational history of UCRC since the Closing Date, Hoste is obligated to correctly account to each shareholder for the operations of UCRC.

76.     Hoste has refused to honor Miller's repeated demands for access to the operational accounts and for a full accounting of the operations of UCRC.

77.     The amount of money due from Hoste to Miller is unknown to Miller and cannot be completely and accurately ascertained without an accounting of all the financial transactions of UCRC since the Closing Date.

78.     Miller has no adequate remedy at law.

79.     Miller is entitled to an equitable accounting of the operations of UCRC and UCRC Holdings since the Closing Date.

**WHEREFORE,** Miller respectfully requests that this Court enter judgment in his favor against Hoste, as set forth below.

### THIRD CAUSE OF ACTION
### (Conversion)

80.     Miller realleges paragraphs 1 through 65, inclusive, as Paragraph 80 of Count III.

81.     Hoste has intentionally and wrongfully diverted Miller's property interest in shares of UCRC and UCRC Holdings common stock, as well as Miller's concomitant property interest in UCRC's profits and the benefits of such profits to Hoste's own personal accounts.

82.     Hoste has further intentionally diverted certain capital investments in UCRC and/or UCRC Holdings made by Miller of personal property, consisting of office equipment and furniture, to Hoste's personal accounts.

83.     Such profits and capital investment are properly the property of Miller and Miller has an immediate right to a possessory interest in the property.

84.     Hoste's conduct in diverting and exerting unauthorized dominion over Miller's property constitutes conversion without privilege and in bad faith.

85.     As a result of Hoste's conduct, Miller has been damaged in an amount to be determined by the trier of fact, together with prejudgment interest.

86.     Miller has demanded the return of his personal property, which demand was refused and rejected.

**WHEREFORE,** Miller respectfully requests that this Court enter judgment in his favor against Hoste, as set forth below.

### COUNT IV
### Civil Theft

#### Cause of Action Under Fla. Stat. §§ 772.11 and 812.035
#### for Violation of Fla. Stat. §812.014

87.     Miller realleges paragraphs 1 through 65, inclusive, as Paragraph 87 of Count IV.

88.     Hoste knowingly and willfully obtained money and property belonging to Miller with the specific criminal intent to deprive Miller, either temporarily or permanently, of the money or the beneficial ownership of fifty per cent (50%) of the shares of common stock of UCRC and UCRC Holdings, which were supposed to be issued to Miller, in the case of UCRC Holdings, and to be transferred to Miller, in the case of UCRC, and which indeed were issued and transferred to Miller as of the Closing Date, in consideration for Miller's investment of cash, property and services performed for UCRC and UCRC Holdings, as more particularly set forth above, in violation of Fla. Stat. §812.014.

89.     As a result, Miller has been injured and has lost the value of his money, personal

16

property and property interest in the value of his UCRC common stock and UCRC Holdings common stock, plus interest from the date of such deprivation.

90.     More than thirty (30) days prior to the filing of this action, Miller made written demand on Hoste for three times the value of the property subject to civil theft, and Hoste has failed and refused to satisfy the demand or to return any of Miller's money or property.

91.     Based on the foregoing, Miller is entitled to reasonable attorney's fees pursuant to Fla. Stat. §§ 772.11 and 772.185, as amended.

92.     Moreover, Miller is entitled to the remedies provided by Fla. Stat. §§ 812.035 and 772.11.

**WHEREFORE,** Miller respectfully requests that this Court enter judgment in his favor against Hoste, as set forth below.

## COUNT V
### Unjust Enrichment

93.     Miller realleges paragraphs 1 through 65, inclusive, as Paragraph 93 of Count V.

94.     Through his contributions of cash, capital equipment and tireless dedication of services performed on behalf of UCRC and UCRC Holdings between October 2007 and September 2008, Miller has conferred a benefit on Hoste, who at all times material has had knowledge of the benefit.

95.     Hoste has voluntarily accepted and retained the benefit conferred by Miller.

96.     Under the facts and circumstances that have been alleged with particularity in this Complaint, it would be inequitable for Hoste to retain the benefits conferred by Miller without paying for the benefits.

**WHEREFORE,** Miller respectfully requests that this Court enter judgment in his favor against Hoste, as set forth below.

## COUNT VI
## Alternative Common Law Fraud

97. Miller realleges paragraphs 1 through 65, inclusive, as Paragraph 97 of Count VI.

98. At all times material, Hoste has represented that Miller would be an equal equity partner in UCRC and UCRC Holdings as more fully alleged with specificity, *supra*.

99. The representations made by Hoste were knowingly false at the time that the representations were made.

100. Hoste knowingly and maliciously made the representations for the purpose of inducing Miller to secure a loan and to provide cash, personal property and services to enable himself (through UCRC Holdings, ultimately) to finance the acquisition of UCRC.

101. In justifiable reliance on the representations that he would be an equal equity partner of UCRC and UCRC Holdings, Miller in fact was induced to contribute, and did contribute, cash, personal property and services which were utilized for the purpose of acquiring UCRC by Hoste and Miller.

102. But for the contributions of Miller, the consummation of the acquisition of UCRC by Hoste and Miller (through UCRC Holdings, ultimately) would never have occurred.

103. As a result of the actions taken by Miller in reliance on Hoste's misrepresentations, Miller has suffered damages in the form of loss of cash and personal property, loss of revenues from an ongoing business as a direct and foreseeable result of the time expended assisting Hoste in the acquisition of UCRC, and loss of benefit of the bargain upon which Miller relied.

**WHEREFORE,** Miller respectfully requests that this Court enter judgment in his favor against Hoste, as set forth below.

## VERIFIED SHAREHOLDER DERIVATIVE PETITION

Plaintiff, Jeffrey Miller, by and through undersigned counsel, files this Verified Shareholder Derivative Petition against Defendant Gary Hoste, and alleges:

104.    Miller realleges Paragraphs 1 through 65, inclusive, as Paragraph 104.

105.    This is a shareholder derivative action brought by Plaintiff for the benefit of Nominal Defendants UCRC, Inc. and UCRC HOLDINGS, Inc.

106.    Other than Hoste, Miller is the sole putative shareholder of UCRC.   As such, Miller will fairly and adequately represent the interests of UCRC and its shareholders in enforcing the rights of UCRC.

107.    Other than Hoste, Miller is the sole putative shareholder of UCRC Holdings. As such, Miller will fairly and adequately represent the interests of UCRC Holdings and its shareholders in enforcing the rights of UCRC Holdings.

108.    At all times material, Miller was a shareholder in fact of UCRC or Miller's shareholder interest later devolved on him by operation of law.

109.    At all times material, Miller was a shareholder in fact of UCRC Holdings or Miller's shareholder interest later devolved on him by operation of law.

110.    This action is not brought as a collusive action to confer jurisdiction that this Court would otherwise lack.

111.    Hoste currently purports to be the sole shareholder of UCRC and in fact is acting in the capacity of UCRC's controlling shareholder.   Hoste has attained control of UCRC through fraud or, in the alternative, oppression or unlawful squeeze out of Miller as a 50%

19

stockholder, through Hoste's intentional misrepresentation that Miller is either not a shareholder of UCRC or was removed as a shareholder by a vote of the majority shares of UCRC common stock. As such, the controlling shareholders of UCRC have interests which are in this lawsuit.

112.   Hoste currently purports to be the sole shareholder of UCRC Holdings and in fact is acting in the capacity of UCRC Holding's controlling shareholder. Hoste has attained control of UCRC Holdings through fraud or, in the alternative, through oppression or unlawful squeeze out of Miller as a 50% stockholder, through Hoste's intentional misrepresentation that Miller is either not a shareholder of UCRC or was removed as a shareholder by a vote of the majority shares of UCRC Holdings' common stock. As such, the controlling shareholders of UCRC Holdings have interests which are antagonistic to Miller and UCRC Holdings is thus properly aligned as a defendant, together with Hoste, in this lawsuit.

113.   Miller has not made any effort to seek remediation of Hoste's breaches of fiduciary duties to the shareholders of UCRC from the directors of UCRC. In view of the fact that Hoste acts with self-designated authority as the "sole director" of UCRC, which self-appointment has occurred unlawfully and with malice and oppression towards Miller, any effort by Miller to obtain desired action from the directors of UCRC (Hoste) would be futile.

114.   On or about October 8, 2008, Miller noticed a meeting of the officers and directors of UCRC Holdings for the purpose of asking the corporation to address Hoste's breaches of fiduciary duties to UCRC Holdings' shareholders, which breaches are more fully set forth below.

115.   Hoste ignored the notice of the meeting of the officers and directors.

## COUNT VII

20

## (Breach of Fiduciary Duty/UCRC)

116.    Miller realleges paragraphs 1 through 65 and 105 through 115, inclusive, as Paragraph 116 of Count VII.

117.    As the president and shareholder of UCRC, which is a close corporation, Hoste owes a fiduciary duty to other shareholders, including Miller. Tillis v. United Parts, Inc., 395 So. 2d 618 (Fla. 5th DCA 1981).

118.    As a director of UCRC, Hoste owes a fiduciary duty to the corporation and its shareholders to discharge his duties:  (a) in good faith; (b) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (c) in a manner he reasonably believes to be in the best interests of the corporation.

119.    Miller placed trust in Hoste and Hoste accepted that trust.

120.    Further, Hoste's fiduciary duty to Miller arises out of Hoste's status as sole operator of UCRC, with exclusive dominion over the financial data and reporting

121.    Hoste has engaged in self-dealing and breached his fiduciary duty owed to Miller as a shareholder of UCRC by:

        a.    compensating himself excessively and making preferential illicit distributions to himself, which also constitutes corporate waste pursuant to Fla. Stat. §607.07401;

        b.    failing to disclose all material information, including the corporate records and financial information relating to the operations of UCRC;

        c.    exceeding the scope of his authority by instructing CPA Bob Hovenan to deny Miller, a 50% shareholder, access to financial information relating to the operations of UCRC;

d.      squeezing out Miller from the operations and enjoyment of the enterprise without consideration;

e.      converting Miller's personal property interest in UCRC, for his own personal benefit and thus depriving Miller of his direct, indirect, derivative or residual interest in UCRC's book of business and/or its benefits.

f.      refusing to pay Miller (the other shareholder) while making preferential distribution to himself;

g.      diverting or misappropriating revenues from the operations of UCRC solely for his personal benefit.

h.      usurping corporate opportunities; and

i.      wasting corporate assets by failing to take advantage of Miller's special expertise as a developer of corporate markets.

122.    In doing so, Hoste acted purposefully, maliciously, and with wanton or reckless disregard for the rights and interests of UCRC and Miller as a shareholder of UCRC, in derogation of his fiduciary duties.

123.    As there was no legitimate business purpose for Hoste's actions, Hoste's actions constitute breaches of Hoste's fiduciaries duties owed as a director of UCRC not to use his control as an advantage over other stockholders.

124.    As a direct and proximate result of Hoste's breaches of his fiduciary duties, Miller has suffered damages in an amount to be proven at trial.

**WHEREFORE,** Miller prays for judgment against Hoste, as set forth below.

### COUNT VIII
### (Breach of Fiduciary Duty/UCRC Holdings)

22

125.    Miller realleges paragraphs 1 through 65, and 105 through 115, inclusive, as Paragraph 122 of Count VIII.

126.    As a shareholder of UCRC Holdings, which is a close corporation, Hoste owes a fiduciary duty to other shareholders, including Miller. Tillis v. United Parts, Inc., 395 So. 2d 618 (Fla. 5th DCA 1981).

127.    As a director of UCRC Holdings, Hoste owes a fiduciary duty to the corporation and its shareholders to discharge his duties:  (a) in good faith; (b) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (c) in a manner he e reasonably believes to be in the best interests of the corporation.

128.    Miller placed trust in Hoste and Hoste accepted that trust.

129.    Further, Hoste's fiduciary duty to Miller arises out of Hoste's status as sole operator of UCRC Holdings, with exclusive dominion over the financial data and reporting

130.    Hoste has engaged in self-dealing and breached his fiduciary duty owed to Miller as a shareholder of UCRC Holdings by:

a.    compensating himself excessively and making preferential illicit distributions to himself, which also constitutes corporate waste pursuant to Fla. Stat. §607.07401;

b.    failing to disclose all material information, including the corporate books and records and financial information relating to the operations of UCRC Holdings;

c.    squeezing out Miller from the operations and enjoyment of the enterprise without consideration;

d.    making a material misrepresentation to the Florida Secretary of State that a majority vote was taken at a shareholder meeting  to oust Miller as an officer and director of UCRC Holdings, when in fact no such meeting was held and no such majority vote was taken;

23

e.      converting Miller's personal property interest in UCRC Holdings for his own personal benefit and thus depriving Miller of his direct, indirect, derivative or residual interest in UCRC Holdings' book of business and/or its benefits.

f.      refusing to pay Miller (the other shareholder) while making preferential distribution to himself;

g.      diverting or misappropriating revenues from the operations of UCRC Holdings solely for his personal benefit; and

h.      usurping corporate opportunities.

131.   In doing so, Hoste acted purposefully, maliciously, and with wanton or reckless disregard for the rights and interests of UCRC Holdings and Miller as a shareholder of UCRC Holdings, in derogation of his fiduciary duties.

132.   As there was no legitimate business purpose for Hoste's actions, Hoste's actions further constituted a breach of Hoste's fiduciaries duties owed as a director of UCRC Holdings not to use his control as an advantage over other stockholders.

133.   As a direct and proximate result of Hoste's breaches of his fiduciary duties, Miller has suffered damages in an amount to be proven at trial.

**WHEREFORE,** Miller prays for judgment against Hoste, as set forth below.

## PRAYER FOR RELIEF

Miller prays that this Court enter judgment in his favor, as follows:

A.      As declaratory relief, declaring that Miller has a vested fifty percent (50%) equity interest in UCRC and/or UCRC Holdings with a comcomitant entitlement to an equal share of corporate profits and distributions;

B.      Ordering an equitable accounting of all earnings, profits and other benefits arising from the operations of UCRC and/or UCRC Holdings since the Closing Date;

C.      Awarding Miller compensatory and punitive damages for Hoste's conversion;

D.      Awarding Miller damages for civil theft pursuant to Fla. Stat. §772.11 in an amount to be determined at trial, to represent the trebling of the current value of the equity position in UCRC and UCRC Holdings of which Miller has been wrongfully deprived by Hoste, together with statutory interest, costs and attorney's fees.  Further, Miller requests that this Court order that Hoste divest himself of that portion of his interest in UCRC and UCRC Holdings, Inc which has been wrongfully taken from Miller, pursuant to Fla. Stat. §812.035.

E.      Disgorging corporate profits and distributions which Hoste has personally attained through unjust enrichment;

F.      Awarding Miller compensatory and punitive damages for fraud, including lost profits;

G.      For director and controlling shareholder Hoste's breaches of fiduciary duty to UCRC and UCRC Holdings shareholders,

1.      Awarding UCRC and UCRC Holdings the amount of damages sustained by the respective corporations as a result of Hoste's breaches of fiduciary duties, abuse of control, waste of corporate assets and unjust enrichment, including restitution to UCRC and UCRC Holdings shareholders from the individual Defendant Hoste, and ordering disgorgement of all profits, benefits, and other compensation obtained by Hoste;

2.      Awarding Miller, as the sole shareholder of UCRC and UCRC Holdings other than Hoste, compensatory and punitive damages sustained as a result of Hoste's breaches of fiduciary duties, abuse of control, waste of corporate assets and unjust enrichment;

25

3.      Awarding extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions, including attaching, impounding, imposing a constructive trust on or otherwise restricting Hoste's assets which have been obtained from his improper and/or unlawful activities so as to ensure that Miller, on behalf of shareholders of UCRC and UCRC Holdings has an effective remedy;

H.      Awarding Miller, both individually and on behalf of shareholders of UCRC and UCRC Holdings, reasonable attorney's fees and the costs of this action; and

I.      Awarding Miller, both individually and on behalf of shareholders of UCRC and UCRC Holdings, such other and further relief as may be just, proper and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

HOWARD J. LEVINE, ESQ.
Law Offices of Howard Levine
1560 Lenox Avenue
Suite 307
Miami Beach, FL 33139
Tel:    (305) 534-0403
Fax:    (305) 672-4127
Fla. Bar No. 0075670
HLevineEsq@aol.com

26

## <u>VERIFICATION</u>

I, JEFFREY Miller, declare that I have reviewed the Complaint and Shareholder Derivative Petition prepared on behalf of UCRC, Inc. and UCRC Holdings, Inc and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and his investigation and for that reason believe them to be true. I further declare that I am a bona fide holder for value of common stock of UCRC, Inc. and UCRC Holdings, Inc. The corporate records of UCRC, Inc. and UCRC Holdings, Inc. reflect, to the best of my knowledge, or reasonably should reflect, my ownership interest in these entities. I believe that such corporate records are in the sole possession, custody and control of either Gary Hoste or the corporate accountant[s] or corporate attorney[s] for the Nominal Defendants, who has denied my access to such corporate records. If, for any reason, the corporate records are inconsistent with this declaration, I further declare that any contrary record evidence which may indicate that I was never a holder of common stock in UCRC, Inc. or UCRC Holdings, Inc. is the result of fraudulent conduct by Gary Hoste,

Dated: June 2ND 2011

_____
Jeffrey Miller

STATE OF CALIFORNIA   )
COUNTY OF Contra Costa   )

BEFORE ME personally appeared Jeffrey Miller, who after first being duly sworn, has attested to the truth of the foregoing Verification.

_____
NOTARY PUBLIC
State of California

My commission expires: APRIL 23RD 2013

MUKESH P. PATEL
COMM. # 1842122
NOTARY PUBLIC-CALIFORNIA
CONTRA COSTA COUNTY
MY COMM. EXP. APR. 23, 2013