UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-61946-CV-
COHN/SELTZER

JEFFREY MILLER, etc.
    Plaintiff,
vs.

GARY F. HOSTE,

and

UCRC Inc., and
UCRC HOLDINGS,
    Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

COMES NOW, Defendant, GARY F. HOSTE and nominal Defendants UCRC Inc., and UCRC Holdings, by and through their undersigned attorney, pursuant to Fed. R. Civ Pro. 12 (b) 6, files this Motion to Dismiss Plaintiff's Complaint, and states as follows:

### BACKGROUND

1. Plaintiff has sued Defendants, alleging that Plaintiff has been denied the benefit of an oral agreement. The Plaintiff alleges that the object of the oral agreement was the right to equal (50/50) control, ownership and profits of UCRC Inc., through the entity UCRC Holdings, Inc. (collectively UCRC). According to the Complaint, UCRC Inc. was formed for the express purpose of delivering chiropractic services to Florida patients. (Par. 9 P's Complaint).

2. By the Complaint, Plaintiff seeks a declaration that the oral agreement is binding and enforceable and that he is entitled to profits lost to him as a result of Defendant having

'locked him out' of the corporation. The Plaintiff alleges to be entitle to relief under theories of Declaratory Relief (Count I); Equitable Accounting (Count II); Conversion (Count III); Statutory Civil Theft (Count IV); Unjust Enrichment (Count V); Common Law Fraud (Count VI); and a Shareholder Derivative Petition against each of the corporation nominal Defendants (Counts VII and VIII).

3. Central to each of Plaintiff's claims is the alleged existence of an oral agreement entitling Plaintiff to 50% ownership of UCRC Inc and UCRC Holdings, Inc.

4. Most important for the purposes of this Motion to Dismiss, Plaintiff concedes that as an element of the oral agreement, the Plaintiff submitted written loan applications in furtherance of a scheme to purchase UCRC. Plaintiff candidly alleges that in that loan application Plaintiff represented ownership to the lender (Small Business Administration, through CIT) of their respective shares in UCRC of 15% to the Plaintiff, who had the lesser credit, and 85% to the Defendant, who had the better credit. (Par. 18 & 32-33 P's Complaint).

5. Plaintiff also alleges that the parties to the oral agreement submitted a licensing application, as part of that agreement to Florida Agency for Health Care Administration ("AHCA") which likewise alleged 85% ownership of UCRC in Defendant and 15% in Plaintiff, presumably to be consistent with the loan applications and to further satisfy financing requirements found the licencing statues of Florida. (Par. 34 P's Complaint)

6. Plaintiff blithely explains this discrepancy by suggesting that the lending authorities and licensing agency were aware of the fact that the split in ownership between Plaintiff and Defendant was actually different than what was represented in the written loan a licencing applications. (Pars 32-25 P's Complaint) Plaintiff suggests that this representation in the

loan application was appropriate, because it would make the processing go 'more smoothly'. (Pars. 32, 35 and 41 P's Complaint) Plaintiff suggests, in course of attempting to make his claim, that the misrepresentations in the applications were somehow acceptable to the lender and licensing agency simply because the alleged 50% ownership was known to their agent, a Mr. Mark Thompson. (Par. 35 of P's Complaint). Nowhere in the Complaint is it alleged that the loan application or the licence application were amended to disclose the oral agreement of 50% ownership Plaintiff asks this Court to enforce by this action (Pars 1-130 P's Complaint).

7. Plaintiff alleges that the SBA loan, obtained under authority of the application containing the representation to the lending authorities of 15% ownership in UCRC Holdings in Plaintiff and 85% in the Defendant, closed 'on or about' June 30, 2008. (Par. 35 and 41 P's Complaint). Plaintiff admits further that at the time of the application, and at the time of closing of the loan, the Plaintiff and Defendant were actually, if the allegations in the Complaint are accepted as true, 50% owners in UCRC Holdings, Inc and thus UCRC Inc, itself. (Par 39 and 41, P's Complaint).

## LAW AND ARGUMENT

8. The Plaintiff's Complaint fails to state a claim upon which relief may be granted and should be dismissed. Rule 12 (b) 6., Fed. R. Civ. Pro. Accepting the allegations in the Complaint as true for the purposes of this motion only, the contract Plaintiff seeks to enforce is illegal and, based upon long established Florida law, it can not be enforced as it is contrary to public policy.

9. Plaintiff concedes that the oral agreement he seeks to enforce was created, or at the very

least evolved into, a scheme of defrauding lending and licencing authorities. Plaintiff alleges that at all times his oral agreement with Defendant called for a 50% split in ownership of UCRC, and that he submitted loan application to CIT, which the Complaint concedes is backed by SBA and that in that loan application Plaintiff represented that he owned, or was to own, only 15% interest in the UCRC entities. (Pars. 32, 35 and 41 P's Complaint) Thus, were it to enforce this alleged oral contract, this Court would be lending it imprimatur to the Plaintiff's scheme, a scheme which ultimately would result in the issuance of a federal loan under a fraudulent application.

10. Florida Court's have long held that contracts which are illegal are void and not enforceable in any action, no matter what inequity might result to the complaining party. The Second District Court of appeal summed up the reasoning succinctly when it stated:

> "......... courts set aside or refuse to enforce illegal contracts, in general, not from any regard for the objecting party, nor from a desire to protect his individual interests, but from reasons of public policy. Where two persons with equal knowledge and equally participating in the fault, have entered into an illegal agreement, and one of them has obtained by the other's voluntary act all the benefit of it for himself, his refusal to perform on his own part is, generally considered in itself alone, unjust and inequitable; but the law sustains him in this position, because it takes into account the interests of society and of the state, which demand the complete suppression of such agreements. The objection which prevails and avoids the illegal contract comes not from the individual litigant, but from the public at large who speak through the courts."

<u>Amoco Drainage District v. County of Pinellas</u>, 137 So.2d 234 (Fla. 2nd DCA 1967)

Therefore, as to the matter before this Court and accepting as true the allegation that Defendant has 'shut out' the Plaintiff from ownership of 50% of the subject corporation, (an allegation which the Defendant strongly contests, in fact) the Court must dismiss this Complaint, as enforcing such a contract would require this Court to enforce

an agreement that, as alleged, would complete the act of loan fraud, which is without question against the public policy. See *18 U.S.C. 1001* et al., making misrepresentation in the process of obtaining a loan from a federally backed institution a felony. See also *Title 15 Sec 645*, which makes it a felony to make false statements in obtaining a loan from the Small Business Administration, specifically, and in doing so states:

> "Offenses and penalties (a) False statements; overvaluation of securities **Whoever makes any statement knowing it to be false**, or whoever willfully overvalues any security, **for the purpose of obtaining for *himself or for any applicant* any loan,** or extension thereof by renewal, deferment of action, or otherwise, or the acceptance, release, or substitution of security therefor, **or for the purpose of influencing *in any way* the action of the Administration**, or for the purpose of obtaining money, property, or anything of value, under this chapter, shall be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both.". Emphasis added.

11. The fact that the object of the parties oral agreement, as alleged in Plaintiff's Complaint, was to obtain ownership and control of UCRC, and was not to obtain the federally backed loan, makes no difference. Obtaining the financing which enabled the purchase of URCR by the parties was essential to the parties agreement and is alleged to be an essential term of the oral contract in the Complaint (Par 18 P's Complaint). Therefore the loan application and the misrepresentation found therein cannot be severed from the rest of the alleged oral contract, as it is an essential element of the agreement. Since this element of the agreement was illegal, this Court must refuse to enforce any of the terms of the agreement. In Local No. 234 v. Henley & Beckwith, Inc, 66 So.2d 818 (Fl. 1953) the court refused to declare rights under a 'closed shop' collective bargaining agreement where such agreements were contrary to the Florida Constitution. There, the petitioner sought a declaration of its rights under the contract, arguing that the illegal 'closed shop' portion of the agreement was not the element of the contract it sought to enforce. The

court rejected the argument and refused to declare rights under the agreement, where doing so would recognize a contract that had, as an essential element, an illegal provision.

12. Likewise, the fact that Mr. Mark Thompson, who is alleged to be an agent of the lender, CIT, was allegedly aware of the misleading loan application makes no difference. The mere fact that Mr. Thompson is alleged to have knowledge of the oral agreement and thus the fraudulent nature of the loan application does not operate to make the application legal. Consent by Mr. Thompson, under such circumstances would make him a co-conspirator to the fraud, rather than change the nature of the fraud itself. See Title 15 U.S.C. 645 and the language 'Whoever makes any statement knowing it to be false ...for the purpose of obtaining for *himself or for any applicant any loan"* is guilty of a crime punishable for up to two years, and for example Security Union Title Ins. Co. v. Citibank, N.A., 715 So. 2d 973 ( Fla 1st DCA 1998).

13. All counts of Plaintiff's complaint should be dismissed where the Complaint alleges that the illegal oral agreement, made in contravention of the laws governing Federal loan applications generally and SBA loan applications specifically, is at the center of the relief sought in each count. See Pars. 69 requesting Declaratory Relief, alleging 50% ownership in Plaintiff, par 74, re-alleging par 1-65 (oral agreement) in support of a claim for accounting; par 80, re-alleging par 1-65 (oral agreement) in claim for common law conversion; par 88 (alleging oral agreement) in support of a claim for civil theft; par 93, re-alleging pars 1-65 (oral agreement) in support of a claim for unjust enrichment; par. 97 re-alleging 1-65 (oral agreement) in support of the claim for common law fraud; 111 (oral

agreement) and 116 (re-alleging 1-65) in support of all claims arising under the verified shareholder derivative action.

WHEREFORE, Defendant, GARY F. HOSTE, and the nominal defendant corporations UCRC Inc and UCRC Holdings Inc., respectfully requests the entry of an Order dismissing Plaintiff's Complaint with prejudice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy was emailed to: Howard Levine, Esq., Law Office of Howard Levine, 1560 Lenox, Suite 307, Miami Beach Florida 33139, this 11th day of October, 2011.

/s/ Eric Ash

Randall M. Shochet, Esq.
Florida Bar No.: 959421
Eric Ash, Esq.
Florida Bar No.: 976891
SHOCHET LAW GROUP
Attorneys for Defendants
4897 Jog Road
Greenacres, FL 33467
Telephone: 561-244-5308
Facsimile: 561-253-2695
Email:

Rshochet@shochetlaw.com

Email:

Eash@shochetlaw.com