UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-61946-CIV-COHN/SELTZER

JEFFREY MILLER, individually,
and derivatively on behalf of
Nominal Defendants UCRC Inc.
and UCRC Holdings, Inc.,

      Plaintiff,

v.

GARY F. HOSTE,

      Defendant,

and

UCRC Inc. and UCRC Holdings, Inc.,

      Nominal Defendants.
_____/

## ORDER DENYING MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant Gary F. Hoste and Nominal Defendants UCRC Inc. and UCRC Holdings, Inc.'s Motion to Dismiss Complaint [DE 8] ("Motion").  The Court has considered the Motion, Plaintiff Jeffrey Miller's Response [DE 19], Defendants' Reply [DE 21], and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Jeffrey Miller is a licensed chiropractor in California.  Complaint [DE 1] ¶ 7.  Defendant Gary Hoste is a licensed chiropractor in Florida.  Id. ¶ 6.  According to the Complaint, in or about October 2007, Plaintiff and Mr. Hoste entered into an oral agreement to purchase UCRC, a company formed for the purpose of operating a chiropractic center doing business as "Universal Chiropractic."  Id. ¶¶ 17, 9.  The

Complaint describes the terms of the oral agreement as follows:

> [I]n consideration for a 50% interest in UCRC, [Plaintiff] was obligated (1) to arrange for and secure a bank loan to purchase the ongoing practice, (2) to provide whatever money that was necessary as a down payment to secure the loan and consummate the acquisition, (3) to provide whatever additional incidental moneys would be required to effectuate the purchase agreement, and (4) to participate in marketing efforts as appropriate to expand the ongoing UCRC business. . . . [I]n consideration for a 50% interest in UCRC, Hoste, as a licensed chiropractor in Florida (which [Plaintiff] is not), was obligated to operate the practice. The oral agreement contemplated that both Hoste and [Plaintiff], as officers of the corporation, would draw a reasonable salary in consideration for their respective contributions of services performed for UCRC, in conformity with the requirements of Florida statutes.

Id. ¶¶ 18-20.

After entering into their oral agreement, Plaintiff and Mr. Hoste began negotiating the terms of their acquisition with the UCRC principals. Id. ¶ 22. On or about December 21, 2007, they received an official offer letter. Id. ¶ 23. Then, on or about December 27, 2007, they wrote a letter of intent to the UCRC principals, establishing a purchase price of $475,000 and obligating Plaintiff and Mr. Hoste to make a $10,000 good faith deposit into an escrow account within ten days of the letter's signing. Id. ¶ 26. The deposit was designated as refundable if Plaintiff and Mr. Hoste failed to secure financing for the acquisition. Id. Plaintiff states that he paid the $10,000 deposit out of his personal account on January 26, 2008, and worked with lender CIT Small Business Lending Corporation ("CIT") to secure the loan from December 27, 2007 through June 3, 2008. Id. ¶¶ 27-28. Meanwhile, on or about March 6, 2008, Plaintiff and Mr. Hoste, entered into a stock purchase agreement with the UCRC principals, for 100% of the outstanding shares in consideration for the $475,000 purchase price. Id. ¶ 29.

During the same month, in March 2008, a CIT representative told Mr. Hoste and

Plaintiff that the loan processing would proceed more smoothly if Mr. Hoste was listed on the loan documents as an 85% owner of the purchasing entity because Mr. Hoste's personal credit rating was better than Plaintiff's. Id. ¶ 32. The parties therefore agreed to list on their loan documents that Mr. Hoste had an 85% ownership interest and Plaintiff had a 15% ownership interest. Id. ¶¶ 33-34. The Complaint alleges, "It was understood between and among Hoste, [Plaintiff], and [the CIT representative] that Hoste and [Plaintiff] would enter into a Stock Purchase Agreement for the purpose of restoring the intended equal partnership interests (Hoste 50%; [Plaintiff] 50%) in UCRC, to become effective upon the acquisition of UCRC." Id. ¶ 35. On April 26, 2008, the parties entered into such a Stock Purchase Agreement, in which Mr. Hoste agreed to transfer 35% of the outstanding shares to Plaintiff at the closing of the acquisition of UCRC. Id. ¶ 36.

On June 30, 2008, pursuant to the advice of a CIT representative, Mr. Hoste and Plaintiff formed UCRC Holdings as an entity to hold title to the shares of the corporation. Id. ¶¶ 37-38. The same day, the acquisition of UCRC was consummated, the loan closed, and stock was transferred to Mr. Hoste and Plaintiff each as 50% owners of UCRC Holdings. Id. ¶ 39.

The Complaint represents that after the closing date, both Plaintiff and Mr. Hoste consistently held themselves out to be equal 50/50 owners and partners in UCRC and UCRC Holdings, and they acted accordingly in their contributions. See id. ¶¶ 41-50. However, around late August or early September 2008, Plaintiff says Mr. Hoste inexplicably began to avoid certain communication initiated by Plaintiff, making Plaintiff fear a squeeze-out by Mr. Hoste. Id. ¶ 51. Mr. Hoste ignored notice of a special

meeting to address his conduct. Id. ¶¶ 52-53. Plaintiff alleges that Mr. Hoste unlawfully amended the Articles of Incorporation to make himself the sole officer and/or director. Id. ¶¶ 54-58. Plaintiff further alleges that since Mr. Hoste began operating UCRC, he has been drawing a salary in excess of what the parties had agreed, diverting corporate revenues for his own personal financial benefit, taking advantage of corporate opportunities for his personal financial aggrandizement, and preferentially paying distribution to himself at the expense of other shareholders. Id. ¶¶ 59-61. As a direct and foreseeable result of Mr. Hoste's actions, Plaintiff claims that his "equity interest in UCRC and UCRC Holdings has been seriously jeopardized and damaged." Id. ¶ 63.

On August 31, 2011, Plaintiff filed this action, individually and derivatively on behalf of UCRC and UCRC Holdings, against Mr. Hoste, UCRC, and UCRC Holdings. See id. The Complaint brings the following claims: declaratory relief (Count I); equitable accounting (Count II); conversion (Count III); civil theft (Count IV); unjust enrichment (Count V); and alternative common law fraud (Count VI). See id. As a shareholder derivative action, the Complaint also brings the following claims: breach of fiduciary duty to UCRC (Count VII); and breach of fiduciary duty to UCRC Holdings (Count VIII). On October 11, 2011, Defendants filed their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim

4

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

At this stage in the litigation, the Court must consider the factual allegations in the Complaint as true, and accept all reasonable inferences therefrom.  Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. ANALYSIS

Defendants seek to dismiss the Complaint for failure to state a claim upon which relief can be granted.  Defendants do not dispute that Plaintiff has stated sufficient facts to make out his claims, see Reply at 2; instead, they argue that the Court cannot grant the requested relief because "[a]ccepting the allegations in the Complaint as true for the purposes of this motion only, the contract Plaintiff seeks to enforce is illegal and, based upon long established Florida law, it can not be enforced as it is contrary to public policy." Mot. at 3 ¶ 8.

Florida courts have consistently held that illegal contracts are void and

unenforceable.  Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of United States & Canada v. Henley & Beckwith, Inc., 66 So. 2d 818, 823 (Fla. 1953) ("Agreements in violation of public policy are void because they have no legal sanction and establish no legitimate bond between the parties."); Amoco Drainage & Metal Prods., Inc. v. Pinellas Cnty., 137 So. 2d 234, 238 (Fla. Dist. Ct. App. 1962) ("courts set aside or refuse to enforce illegal contracts, in general, not from any regard for the objecting party, nor from a desire to protect his individual interests, but from reasons of public policy"); see also Hoffman v. Boyd, 698 So. 2d 346, 349 (Fla. Dist. Ct. App. 1997) (holding that illegal contract to marry was void and unenforceable).  A "defendant may assert the invalidity of the contract even though he is a participator in the wrong."  Local No. 234, 66 So. 2d at 823.  "This is so for the reason that one who has entered into a contract or undertaking which is violative of public policy owes to the public the continuing duty of withdrawing from such an agreement."  Id.

Federal law makes it illegal to make misrepresentations in the process of obtaining a loan from a federally backed institution.  See 18 U.S.C. § 1001 *et al*.  Federal law also makes it illegal to make false statements in obtaining a loan from the Small Business Administration.  See 15 U.S.C. § 645.  Defendants argue that the parties' oral agreement was illegal because the parties violated these laws when they made misrepresentations in their loan documents.  See Mot. at 4-5 ¶¶ 10-11; Compl. ¶¶ 18-20.  Defendants contend that "the Court must dismiss this Complaint, as enforcing such a contract would require this Court to enforce an agreement that, as alleged, would complete the act of loan fraud, which is without question against the public

6

policy." Id. at 4-5 ¶ 10.  Defendants conclude that "[a]ll counts of Plaintiff's complaint should be dismissed where the Complaint alleges that the illegal oral agreement, made in contravention of the laws governing Federal loan applications generally and SBA loan applications specifically, is at the center of the relief sought in each count."  Id. at 6 ¶ 13.

     Plaintiff responds that his case is not based on the validity or enforceability of the oral agreement.  Though Plaintiff "does expressly seek a declaration that he has a vested interest as a fifty percent (50%) shareholder of UCRC and UCRC Holdings, the Complaint does not allege that the request to such a declaration arises out of the Oral Agreement, but rather arises out of 'all of the facts and circumstances' which are alleged with particularity through the Complaint."  Id. at 7.  Plaintiff emphasizes that the Complaint does not request any relief based on an assertion that he and Mr. Hoste formed an enforceable oral contract, and that "none of the causes of action advanced by [Plaintiff] require a showing of a binding contract as a *prima facie* element of the cause of action."  Resp. at 3.  Plaintiff explains that the description of the oral agreement "was included in the Complaint – in the event that [Plaintiff] ultimately cannot adduce sufficient facts to prove his equity interest in UCRC, Inc. is fifty percent (50%) as a matter of Florida statutory law (inclusive of Florida's adoption of UCC law), rather than as a matter of breach of contract – because it is relevant to the facts which explain the groundwork for [Plaintiff's] expectation interest of a 50% shareholder stake in UCRC, Inc., and thus go to the heart of [Plaintiff's] alternative pleading of common law fraud."  Id.  Further, even if the oral agreement is central to all of Plaintiff's claims, Plaintiff disputes that the oral agreement contained any terms that were contrary to

public policy.  Id. at 11.

At this stage, reading the allegations in the Complaint as true and accepting all reasonable inferences therefrom, the Court cannot make a determination that the entire Complaint relies on an illegal oral agreement.  Though the Court cannot and will not enforce an illegal contract, dismissal at this stage is inappropriate.

### IV. CONCLUSION

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Complaint [DE 8] is **DENIED**.  Defendants shall file their Answer to the Complaint [DE 1] by no later than **December 22, 2011**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 8th day of December, 2011.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF